UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEAN W. DAVIS,

       Plaintiff,                                  Case No. 1:13-cv-166

v.                                                HON. JANET T. NEFF

L-3 COMMUNICATIONS, COMBAT
PROPULSION SYSTEMS,

       Defendant.
_____/

**OPINION**

Plaintiff filed this action against her former employer, L-3 Communications, Combat Propulsion Systems, alleging age discrimination based on her layoff from her position as Assistant to the President at age 59 during a reduction-in-force ("RIF"), and alleging retaliation after Defendant failed to rehire her to fill an Executive Assistant position that subsequently became available. Defendant has filed a motion for summary judgment (Dkts 76, 77); Plaintiff has filed a Response (Dkt 82); and Defendant has filed a Reply (Dkt 85). Having fully considered the parties' briefs and accompanying exhibits, the Court grants Defendant's motion.[1]

**I. Facts**[2]

Plaintiff was born in May 1952. (SMF ¶ 1). She was employed by Defendant in its Combat Propulsion System division at its Muskegon, Michigan facility. This division is one of 57 different

---

[1]Because the facts and arguments are well-presented in the materials submitted, the Court finds oral argument unnecessary to decide the motion. *See* W.D. Mich. LCivR 7.2(d).

[2]The parties have filed statements of material facts (SMF) (Def's. Stmt., Dkt 78; Pl's. Resp., Dkt 84), agreeing to certain underlying facts in numbered paragraphs, as cited herein.

business divisions within Defendant's Electronic Systems Group, which has 16,000 employees working at hundreds of facilities throughout the United States. (¶ 2) Defendant provides a broad range of systems and products for use by the United States military, including a number of the operational systems utilized in the U.S. Army's Bradley Fighting Vehicle. (¶ 3) Defendant's Combat Propulsion System facility in Muskegon, Michigan, is primarily responsible for designing and manufacturing engines, transmissions, suspensions, and turret drive systems for combat vehicles. (¶ 4) Defendant reduced its workforce due to a reduction in the United States government's spending on defense, which included significant cuts to orders for the Bradley Fighting Vehicle. (¶ 5) As of June 2009, Defendant had 601 employees at its Muskegon facility. After the January 9, 2012 RIF, Defendant's Muskegon facility had 323 employees. That facility now has 298 employees. (¶ 6)

In September 2006, Defendant hired Plaintiff as an Executive Assistant. In that position, she was responsible for assisting the Vice-Presidents of Engineering, Program Management, and Technology and Planning. Plaintiff held the Executive Assistant position until she was promoted to Assistant to the President in September 2010. (¶ 7) Plaintiff was recommended to fill the position of Assistant to the President, and the then-President of Defendant's Combat Propulsion Systems division, Michael Soimar, who supervised the position, approved her hiring. (¶ 8) Soimar was born in October 1945. (¶ 9)

Plaintiff continued working in the Assistant to the President position until it was eliminated as part of a bona fide RIF on January 9, 2012. (¶ 10) At all times relevant to this litigation, Plaintiff was employed by Defendant on an at-will basis. (¶ 11) When Plaintiff moved from the Executive Assistant position to the Assistant to the President position, she transferred to a different department;

her title changed; her supervisor changed; and she received a pay increase. (¶¶ 16-19) From the time that Plaintiff was hired in September 2006 through the time she was terminated in January 2012, her salary increased from $49,447.63 to $61,800.13. (¶ 20)

When Plaintiff moved from the Executive Assistant position to the Assistant to the President position, it was a promotion. (¶ 21) After her promotion, Plaintiff probably spent the majority of her time working for Soimar, although she also assisted three Vice-Presidents. (¶¶ 22-23) Soimar completed Plaintiff's annual performance evaluation, which resulted in Plaintiff receiving a rating of "Fully Meets Expectations" while employed as the Assistant to the President. (¶ 24)

Defendant's January 9, 2012 RIF resulted in the termination of 13 employees across 13 different job classifications. (¶ 25) One of the employees affected by the January 9, 2012 RIF was Plaintiff, whose position—Assistant to the President—was eliminated. (¶ 26) Soimar was the decision maker with respect to Plaintiff's position, and he was the individual responsible for eliminating the Assistant to the President position. (¶ 27) Plaintiff was the only Assistant to the President as of the January 9, 2012 RIF. When she was terminated, she had served as the Assistant to the President for approximately 16 months. (¶ 28)

Soimar never made any ageist comments to or about Plaintiff, or to or about any employee. (¶¶ 29-30) Plaintiff never heard any member of Defendant's management make ageist comments, about her or anyone else. (¶ 31)

Plaintiff was informed in person of the decision to terminate her employment by Patti Tebelman, Vice-President of Human Resources, and Soimar. (¶ 32) Plaintiff was offered a severance package consistent with Defendant's Severance Policy at the time she was terminated, which included severance pay based upon her years of service, health insurance continuation, and

3

outplacement assistance. Tebelman offered to advise her regarding her unemployment benefits and offered to review the severance package in detail. Plaintiff declined, indicating she would not sign the severance agreement and would be consulting a lawyer. (¶ 33)

On February 15, 2013, employee Heather Poulin resigned her position as an Executive Assistant effective March 1, 2013. (¶ 34) No later than February 17, 2013, Plaintiff became aware that Poulin had resigned and was training a temporary replacement. (¶ 35) After learning of Poulin's resignation, Plaintiff did not contact Defendant to apply for the Executive Assistant position that Poulin resigned from; did not contact Defendant to determine whether, when, or how the Executive Assistant position that Poulin resigned from would be filled; and did not contact Defendant to express any interest in returning to work for the company. (¶¶ 36-38) At and after the time that she learned of Poulin's resignation, Plaintiff knew whom she could contact regarding possible employment with Defendant, and had their contact information available to her. (¶ 39)

Following Poulin's resignation, Defendant temporarily filled the position with a contract employee from an employment agency. (¶ 40) Defendant posted the Executive Assistant position internally to current employees under its Job Opportunity Awareness Program ("JOAP") from March 8-15, 2013. Three individuals who applied for the Executive Assistant position were interviewed: Patricia Sapone, Jane Routt, and Lakeesha Anderson. (¶ 41) Anderson, a 34-year-old African American female that worked for Defendant as an Administrative Assistant, and a union member, was offered the open Executive Assistant position, and accepted. (¶ 43)

Both Bonnie Fox and Jodie Spoelman were terminated as a result of the January 9, 2012 RIF. At the time, Fox was 63 years old and held the job title of Team Lead-Property Administration. Spoelman was 53 years old and held the title of Contracts Representative. (¶ 44)

In May 2012, Fox returned to work for Defendant on a contract basis, performing substantially similar job duties to those she had before the January 2012 RIF. She was subsequently rehired by Defendant in November 2012. (¶ 45) Effective April 9, 2012, Spoelman was rehired by Defendant as a Senior Contracts Representative. (¶ 46)

## II. Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013); *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citation omitted).

The moving party has the initial burden of showing the absence of a genuine issue of material fact. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). The burden then "shifts to the nonmoving party, who must present some 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "There is no genuine issue for trial where the record 'taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Burgess*, 735 F.3d at 471 (quoting *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The ultimate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sierra Brokerage Servs.*, 712 F.3d at 327 (quoting *Anderson,* 477 U.S. at 251-52).

### III.  Discussion

Plaintiff alleges age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and Michigan's Elliot-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2101 *et seq*.  The analytic framework and evidentiary burdens for Plaintiff's discrimination claims are essentially the same under either statute for purposes of this motion.  *See Geiger v. Tower Automotive*, 579 F.3d 614, 621-22, 626 (6th Cir. 2009); *see also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998); *Lytle v. Malady*, 579 N.W.2d 906, 915-17 (Mich 1998).  Plaintiff also alleges a retaliation claim under the ADEA.

The Court finds no jury-submissible question with respect to either substantive claim, discrimination or retaliation, and, concludes further that the evidence is "so one-sided" that Defendant prevails as a matter of law.  *See Sierra Brokerage Servs.*, 712 F.3d at 327.

### A.  Discrimination

"Where the employer eliminates an employee's position pursuant to a reduction in force or a reorganization, the employee establishes a *prima facie* case of age discrimination when he or she shows (1) that he or she was forty-years old or older at the time of his or her dismissal; (2) that he or she was qualified for the position; (3) that he or she was discharged; and (4) 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.'" *Ercegovich*, 154 F.3d at 350 (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990), cert. denied, 498 U.S. 878 (1990)).  Here, the parties do not dispute that the first three elements are met; only the fourth element is at issue.  "A plaintiff satisfies the fourth prong where he or she demonstrates that a 'comparable non-protected person was

treated better.'" *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992) (quotation omitted)).

Defendant asserts that Plaintiff was terminated as a result of a bona fide RIF in January 2012, which eliminated 13 different employees across 13 job classifications, and was one of several RIFs Defendant conducted based on declining business caused by changes in government policy. Defendant contends that there is no evidence that Soimar singled out Plaintiff for inclusion in the RIF because of her age.

The record supports Defendant's contention and does not permit a reasonable conclusion to the contrary. Defendant determined that it was necessary to institute a workforce reduction because of a significant decline in annual sales. Each department head was required to review his or her department to identify positions for elimination to reach budget targets. Soimar determined that he would eliminate the Assistant to the President position to "do more with less" in his department, in keeping with what was asked of other departments (Soimar Dep. at 42). There is no evidence that he took Plaintiff's age into account in making this decision. In fact, Soimar was the one who hired Plaintiff for the position in September 2010, only a year and four months earlier at age 58. And Plaintiff never heard any ageist comments by Soimar or anyone else in management during her employment with Defendant.

Defendant carried out the January 2012 staff reduction in accordance with a standard, facially objective, process for the multiple RIFs that ultimately reduced Defendant's workforce by more than half. (*See* Def's Mot. Br. at 651-53, and record cites therein).[3] Defendant's RIF process was initiated by the receipt of a budget reduction number from its New York headquarters, after

---

[3]The cited page numbers herein refer to the court's electronic docketing page ID#.

which Defendant determined the number of employees necessary to eliminate from its departments to achieve the cost savings. Each department determined what classification would be subject to a RIF, with each department head responsible for determining which employee(s) within a job classification would be terminated, based on specific factors, such as job responsibilities, education and training, skills and expertise, professional and technical knowledge, and work performance. After department heads made their decisions, but before implementing the RIF, Defendant's human resources department and its legal department reviewed a peer comparison for each job classification with more than one employee that was subject to the RIF, to ensure that Defendant complied with all applicable employment laws and minimized the likelihood of litigation (*see* Dkts 32-2, 32-3). However, in job classifications with only a single employee, no peer comparison review was conducted since there was no "peer" to compare to for these single-employee classifications. Defendant's workforce reduction affected all levels of employees, including management. Moreover, the relatively small RIF involving Plaintiff included employees in finance, human resources, production, engineering, quality, contract administration, and other areas. Nothing in these circumstances gives rise to an inference of age discrimination.

Nonetheless, Plaintiff argues that she has presented "additional evidence" to satisfy the fourth prong of a *prima facie* RIF age discrimination case. Plaintiff asserts that this evidence includes : (1) older employees bore the brunt of the RIF, including Plaintiff, whose duties were assigned to the youngest and least experienced administrative assistant; (2) Defendant failed to follow its RIF policy in selecting Plaintiff for the RIF; (3) Defendant's explanation for selecting Plaintiff for the RIF has been proven false, and this explanation has also shifted over time; (4) Defendant failed to disclose ADEA-required information regarding the RIF in January, 2012; and,

8

(5) evidence exists that Defendant's real reason for selecting Plaintiff for the RIF was because she was close to retirement age.

Contrary to Plaintiff's argument, her contentions do not have record support, or to the extent there is some such "evidence," it does not reasonably support the inferences of age-discrimination argued by Plaintiff. For instance, Plaintiff states that Defendant's OWBPA[4] disclosure shows that in five of seven "multiple occupant" job categories that were reduced, Defendant selected the oldest person (whose ages were 61, 55, 55, 53, and 50). Likewise, Plaintiff was the oldest administrative assistant serving Defendant's management team, and Plaintiff's duties were assigned to the youngest administrative assistant at age 38, who had the least work experience. However, as Defendant points out, and Plaintiff acknowledged, there was generally little difference in the age of the employees involved (Ex. T, App. B; Ex 5, Pl. Dep. at 61-63). Nor does Plaintiff's "statistical" analysis take into account that two employees aged 63 and 53 were rehired shortly after the RIF due to specific skill demand (SMF ¶ 44).

Likewise, the record does not establish that Defendant's explanation for selecting Plaintiff for the RIF has been proven "false" or that it has shifted over time merely because it was stated somewhat differently in different contexts by Soimar and in this litigation by counsel. And regardless whether Plaintiff did or did not make the statement noted in Tebelman's exit interview notes that Plaintiff was "60 years old and can retire" (Ex. V), any legal relevance is minimal or nonexistent since Tebelman was not a decision maker with respect to Plaintiff's termination and the comment was made after the termination decision.

---

[4]Older Worker's Benefit Protection Act.

Similarly, whether any OWBPA disclosure was required with respect to Plaintiff's termination is questionable. Moreover, to the extent this contention and others are premised on Plaintiff's subjective classification of her Assistant to the President position in the same decisional group as Executive Assistants, the arguments are fundamentally flawed because nothing in Defendant's RIF process requires such grouping of employees in distinct job classifications and different departments, and the Court finds no basis for imposing such grouping for purposes of Plaintiff's claims. This includes her contention that Defendant/Soimar did not follow the RIF policy in selecting her for the workforce reduction because no "peer comparison" was used and Plaintiff was the most qualified of the administrative assistants.

The "guiding principle" in a workforce reduction discrimination case is that "the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff because of age." *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1466 (6th Cir. 1990). In this case, viewing the evidence in a light most favorable to Plaintiff, the record establishes that Plaintiff's termination resulted from a RIF and without any discriminatory considerations concerning Plaintiff's age.

B. Retaliation

Plaintiff's retaliation claim fails for the same general reasons, i.e., the "evidence" cited by Plaintiff is not reasonably supportive of the inferences of retaliation advanced by Plaintiff. As Defendant points out, it has discretion to fill a position by an internal posting, or by no posting at all, as when Plaintiff was selected to fill the Assistant to the President position. That Defendant failed to solicit Plaintiff for an open Executive Assistant position after her termination, and instead posted the position for internal applications, is not probative of retaliation merely based on the fact

that Plaintiff was, at the time, pursuing legal action against Defendant for her termination. The internal posting was not an anomaly or uniquely associated with Plaintiff's termination. The hiring process for the Executive Assistant position was consistent with Defendant's general practices.

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) the defending party was aware that the plaintiff had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and the adverse action. *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 288 (6th Cir. 2012).

Contrary to Plaintiff's argument (Resp., Dkt 82 at 1231-32), no facts or evidence establish that Defendant "prevented" Plaintiff, in particular, from applying for the open Executive Assistant position as a form of retaliation for her protected activity of filing an ADEA Charge of Discrimination with the EEOC. Plaintiff never contacted Defendant regarding her interest in an Executive Assistance position (which presumably would have been a demotion for Plaintiff, since her advancement from an Executive Assistant to the Assistant to the President was a promotion with a pay increase). Nothing establishes that Defendant was under any obligation to contact or consider Plaintiff for the Executive Assistant position.

And as noted above, although Defendant may have general policies and procedures for posting and filling open positions, it is reasonable that there are at times different circumstances that warrant deviations from those procedures, as when Plaintiff was promoted. In this context, Defendant's internal posting of the Executive Assistant position does not reflect a retaliatory motive nor does it establish that Tebleman gave a "false reason" for failing to contact Plaintiff directly for the Executive Assistant opening (*see id.* at 1240). Nor is the fact that Defendant rehired three

11

employees (Spoelman, Fox and Cook) under different circumstances to substantially similar positions to their prior positions, in different departments from Plaintiff's, probative of Defendant's use of a "different hiring process," or failure to follow a "long-standing practice" (*id.* at 1235, 1239) or retaliation.

Plaintiff has failed to satisfy the retaliation claim elements of an "adverse employment action" and a "causal connection" with respect to Defendant's failure to "rehire" her in an Executive Assistant position, particularly in the context of the more than 300 company-wide layoffs/terminations.[5]

### IV. Conclusion

The Court finds no genuine issues of material fact concerning Plaintiff's claims of age discrimination or retaliation. Plaintiff has presented no persuasive evidence that Defendant's layoff of Plaintiff in the RIF was based on prohibited considerations of age or that Defendant's failure to contact or rehire Plaintiff for an open Executive Assistant position was retaliation for Plaintiff's EEOC complaint against Defendant. Defendant's motion for summary judgment is therefore granted.

An Order will be entered consistent with this Opinion.

Dated: June __22__, 2015            /s/ Janet T. Neff
                                    JANET T. NEFF
                                    United States District Judge

---

[5]Whether the fourth employee, Poulin, falls into the category of a rehire is questionable (*see* Def. Reply, Dkt 85 at 1295, n.4), but in any event, this would add little, if any weight, to Plaintiff's argument.